1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   DONALD R. JARVIS,                    No. 2:14-CV-2952-CMK

12              Plaintiff,

13        vs.                              <u>MEMORANDUM OPINION AND ORDER</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
              Defendant.
16
     _____/
17

18              Plaintiff, who is proceeding with retained counsel, brings this action under

19   42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security.

20   Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

21   judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

22   before the court are plaintiff's motion for summary judgment (Doc. 17) and defendant's cross-

23   motion for summary judgment (Doc. 19)

24   / / /

25   / / /

26   / / /.

                                    1

## I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on June 2011.  In the applications, plaintiff claims that disability began on October 22, 2006.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on February 28, 2013, before Administrative Law Judge ("ALJ") Sara A. Gillis.   In a June 13, 2013, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

> 1.   The claimant has the following severe impairment(s): post-traumatic stress disorder, alcohol dependence, substance induced psychosis, depressive disorder, degenerative disc disease of the lumbar spine, and degenerative disc disease of the hips;
>
> 2.   The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3.   The claimant has the following residual functional capacity: the claimant can perform medium work; the claimant can understand, remember, and carry out simple job instructions, he can maintain concentration, persistence, and pace for simple job tasks, and he can interact appropriately with supervisors and co-workers but not the public;
>
> 4.   Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on October 20, 2014, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

1   including both the evidence that supports and detracts from the Commissioner's conclusion, must

2   be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

3   v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

4   decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

5   Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

6   findings, or if there is conflicting evidence supporting a particular finding, the finding of the

7   Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

8   Therefore, where the evidence is susceptible to more than one rational interpretation, one of

9   which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

10  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

11  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

12  Cir. 1988).

13

14                            **III.  DISCUSSION**

15          In his motion for summary judgment, plaintiff argues that the ALJ improperly

16  evaluated the medical opinions.  The weight given to medical opinions depends in part on

17  whether they are proffered by treating, examining, or non-examining professionals.  See Lester v.

18  Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a

19  treating professional, who has a greater opportunity to know and observe the patient as an

20  individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d

21  1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least

22  weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d

23  502, 506 & n.4 (9th Cir. 1990).

24  / / /

25  / / /

26  / / /

1    In addition to considering its source, to evaluate whether the Commissioner

2  properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

3  in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

4  uncontradicted opinion of a treating or examining medical professional only for "clear and

5  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

6  While a treating professional's opinion generally is accorded superior weight, if it is contradicted

7  by an examining professional's opinion which is supported by different independent clinical

8  findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

9  1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

10 rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

11 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

12 the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

13 finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

14 legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

15 professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

16 without other evidence, is insufficient to reject the opinion of a treating or examining

17 professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

18 conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

19 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

20 see also Magallanes, 881 F.2d at 751.

21    Plaintiff argues that the ALJ's evaluation of the opinions of Drs. Mehtani, Hicks,

22 Ewing, Lacy, and Canty regarding mental limitations "is based on insubstantial evidence and

23 fraught with legal error."   Plaintiff also argues that the ALJ improperly rejected the opinion of

24 Dr. O'Brien regarding his physical limitations.

25 / / /

26 / / /

A.    **Dr. Mehtani**

As to Dr. Mehtani, the ALJ stated:

The record revealed that the claimant was the victim of two separate armed robberies at his workplace on August 6, 2006, and October 22, 2006. October 22, 2006, and November 7, 2006, emergency room records documented anxiety and agitation due to the armed robbery. The claimant was diagnosed with post-traumatic stress disorder (hereinafter "PTSD") and a mood disorder, not otherwise specified. (Exh. 4F). The claimant subsequently sought intermittent mental health treatment from Jack Mehtani, M.D., from December of 2006 and October of 2007. (1F, 2F, 4F). At the initial psychiatric evaluation, which took place on December 4, 2006, two months after the second robbery, the claimant complained of anxiety, panic attacks, depression, irritability, nightmares, flashbacks, and agitation. The claimant's mental status examination revealed intact cognitive functions, orientation to time, place, and person, fair recent and remote memory, average general information and intelligence, fair attention, concentration, insight, and judgment. Dr. Mehtani diagnosed the claimant with PTSD, gave a GAF assessment of 30, and opined the claimant was totally and temporarily disabled from his customary employment. (Exh. 1F/32 to 35). The claimant's course of treatment has included, at various times, the use of Xanax, Provigil, Tofranil, Cymbalta, and psychotherapy. (Exh. 1F, 2F, 4F).

The June 15, 2007, records documented improvement in the claimant's mental condition such that he felt his symptoms were controlled enough that he would likely return to work. Dr. Mehtani gave a GAF assessment of 65. (Exh. 1F/22, 23). Dr. Mehtani opined the claimant was permanent and stationary as of July 1, 2007; gave a diagnosis of PTSD, resolving and a GAF assessment of 50. (Exh. 1F/22, 23). The August 15, 2007, progress note documented even greater improvement in his medical condition. He reportedly accomplished his own activities of daily living, was able to leave his home, and run errands. He was advised to continue with the same medications. (Exh. 1F/19, 20).

However, on August 31, 2007, Dr. Mehtani, opined the claimant remained totally and temporarily disabled. (Exh 1F/17, 18). In the progress note, dated October 10, 2007, Dr. Mehtani noted the claimant was not doing well and suffered from flashbacks, nightmares ,anxiety, and nervousness. His recommended course of treatment included Provigil, Niravam, Tofranil, and supportive psychotherapy. (Exh. 1F/6). Nine days later, Dr. Mehtani, M.D., stated the claimant was permanent and stationary and advised the claimant to continue with the current medication regimen. (Exh. 1F/4).

/ / /

/ / /

/ / /

5

The ALJ added:

> Of note, the records indicated the claimant worked as a warehouse worker, which was temporary in nature, in November and December 2007.  The records indicated the claimant had hoped this temporary position would become permanent.  (Exh 2F, 3F).

Finally, the ALJ also noted:

> According to a letter, dated July 21, 2011, Dr. Mehtani stated the claimant was under his care and opined the claimant was totally and permanently disabled and was unable to engage in any gainful employment indefinitely.  (Exh. 7F, 4).

Plaintiff argues:

> Plaintiff stopped seeing Dr. Mehtani in 2008, but started seeing him again in April 2011 (Tr. 554).  In July 2011, Dr. Mehtani opined that Plaintiff was permanently disabled and indefinitely unable to engage in any gainful employment (Tr. 553).  The ALJ failed to give any reasons for rejecting this opinion, which is a glaring legal error.

The court does not agree.  As defendant accurately observes, Dr. Mehtani expressed no medical opinions regarding plaintiff's functional capabilities.  Rather, Dr. Mehtani rendered the legal conclusion that plaintiff is "totally and permanently disabled" and "unable to engage in any gainful employment."  Such statements do not constitute an acceptable medical opinion and, as such, the ALJ was not required to consider them.  See 20 C.F.R. § 404.1527(d).

**B.    Dr. Hicks**

As to Dr. Hicks, the ALJ stated:

> In September 12, 2009, at the request of the Disability Determination Service, the claimant underwent a consultative psychiatric evaluation with Richard Hicks, M.D., Board Certified Psychiatry.  The claimant's mental status examination was largely unremarkable.  Of note, the claimant reported no history of drug or alcohol usage.  Dr. Hicks diagnosed the claimant as having PTSD in need of medication (possibly Xanax) and assessed the ability to do and follow simple tasks; to interact with co-workers and the public; and to be consistent and regular.  (Exh. 5F).  Dr. Hicks opined that it was possible that after a year of vigorous psychiatric treatment with medications and therapy while under State Disability, the claimant might be able to get back to work, especially in the daytime.  (Exh. 5F) (emphasis in hearing decision).

1   According to plaintiff, the ALJ erred by failing to provide reasons for rejecting Dr. Hicks'

2   opinion "that Plaintiff would be unable to work for at least a year, even with 'vigorous'

3   treatment."

4           Again, the court finds no error.  In context, Dr. Hicks' statement refers to

5   plaintiff's ability to return to his past work, not plaintiff's ability to perform work activities in

6   general.  Moreover, where the doctor did express opinions on plaintiff's functional capabilities in

7   general, those opinions are reflected in the ALJ's residual functional capacity finding.

8       **C.**      **Dr. Ewing**

9           As to Dr. Ewing, the ALJ stated:

10          On August 9, 2011, the claimant underwent a consultative psychological
            evaluation with Troy Ewing, Psy.D., Licensed Psychologist, who reported
11          diagnoses of major depressive disorder, recurrent, moderate PTSD,
            chronic.  Once again, the claimant's mental status examination was largely
12          unremarkable with exception of a depressed and anxious mood.  Dr.
            Ewing opined the claimant had a poor to fair ability to maintain regular
13          attendance in the workplace as PTSD and depressive symptoms would
            likely contribute to occasional attendance problems.  Dr. Ewing assessed
14          the claimant had the ability to perform one or two step simple repetitive
            tasks; to adequately perform complex tasks; to perform work activities on
15          a consistent basis without special or additional instructions; to complete a
            normal workday or workweek without interruptions from a psychiatric
16          condition.  (Exh. 9F).  The undersigned gives moderate [weight] to this
            mental assessment but finds the claimant had a fair (rather than poor)
17          ability to maintain regular attendance given his ability to return to work in
            2007, 2008 and 2009.

18

19  Plaintiff argues that the ALJ failed to provide sufficient reasons for rejecting Dr. Ewing's

20  opinion, that plaintiff's ability to maintain regular attendance in the workplace is "fair to poor."

21  Plaintiff adds: "While the ALJ included a limitation that precluded public contact, she gave no

22  reasons for rejecting Dr. Ewing's opinion of Plaintiff's functional limitations in other areas, such

23  as interacting with co-workers and supervisors, competing a normal workday or workweek, and

24  handling work-related stress (Tr. 28, 576)."

25  / / /

26  / / /

In his report, Dr. Ewing opined that plaintiff has a "fair ability" to accept instructions from supervisors, and interact with co-workers and the public. Dr. Ewing also stated that plaintiff has a "fair ability" to complete a normal workday or workweek, as well as handle normal work-related stresses. Thus, contrary to plaintiff's reading of Dr. Ewing's report, the doctor does not express limitations in these areas. Where Dr. Ewing does opine as to a functional limitation – plaintiff has a "poor to fair" ability to maintain regular attendance – the ALJ rejected any significant limitation in this area, citing contradictory evidence in the record showing that plaintiff was able to work in 2007, 2008, and 2009.

Plaintiff states:

> . . .However, the ALJ cited no evidence that Plaintiff regularly attended these short-term jobs or, for that matter, whether these were full-time jobs that were performed under regular, as opposed to, special conditions (Tr. 27).

The court finds no error. As plaintiff acknowledges, he worked a temporary job in November and December 2007. There is no evidence that, during the duration of this job, plaintiff was unable to maintain regular attendance due to psychiatric impairments. Additionally, as defendant observes, this job ended only because it was temporary, not because plaintiff was unable to do the work. If there is evidence available that this job was less than full-time or performed under special conditions, plaintiff failed to present it.

### D.    Dr. Lacy

Regarding Dr. Lacy, the ALJ stated:

> The claimant reported a longstanding history of alcohol dependence beginning at the age of 18 during the June 2012 consultative psychological examination with Deborah Lacy, Psy.D. Dr. Lacy found the claimant suffered from alcohol dependence, dysthymia, and cognitive impairment not otherwise specified and assessed he had a severely limited ability to perform even simple, repetitive tasks, to interact with the public, supervisors, or cor-workers. The undersigned gives significant weight to this report but notes no continuous 12 months for daily alcohol use which would be material to the finding of disability. The prior examination reported no or only mild mental limitations without consideration of drug and/or alcohol use. He reported he currently drank a six-pack of beer per

1      day, a pint of tequila, and one-half pint of brandy per day. In addition, he
2  reported a history of marijuana use in his 20's but stated it was currently
   difficult to buy marijuana due to limited financial funds. However, he
3  admitted that if someone came over, he would smoke marijuana. The
   claimant also reported a history of methamphetamine use in his twenties
4  but stopped in his thirties. The claimant reported his activities of daily
   living included preparing simple meals, competing light household chores,
5  performing and basic self-grooming, and driving an automobile. He
   reported having a good support system and good relationships with his
6  friends. (Exh. 18F).

7  Plaintiff argues that the ALJ misread Dr. Lacy's opinion. According to plaintiff, the "ALJ

8  assumed that Dr. Lacy meant Plaintiff's limitations were caused [by] his use of alcohol, which is

9  an inaccurate reading of Dr. Lacy's report, and an effective rejection of her opinion of Plaintiff's

10 functional limitations."

11     As accurately noted by the ALJ, Dr. Lacy reported extensive current alcohol use.

12 It was thus reasonable for the ALJ to infer that the doctor's opinion is based at least in large part

13 on plaintiff's current alcohol use. Thus, the ALJ permissibly concluded that the limitations

14 opined by Dr. Lacy would not be present to the extent she opined absent such extensive alcohol

15 use. Given this permissible presumption, the ALJ properly discounted limitations opined by Dr.

16 Lacy in light of the lack of evidence of daily alcohol use over a 12-month period. Again, if such

17 evidence exists, plaintiff failed to present it.

18     **E.**    **Dr. Canty**

19     As to Dr. Canty, the ALJ stated:

20     It is noted that in January of 2013, another consultative psychiatric
   examiner, Timothy Canty, M.D., diagnosed the claimant with PTSD, rule
21 out mood disorder, not otherwise specified vs. major depression and
   opined the claimant did not have the mental ability to perform work
22 activity on a consistent basis. Dr. Canty assessed the claimant had a
   marked to extremely limited ability to understand, remember, and carry
23 out simple instructions and extremely limited ability to make judgments in
   work related decisions, to interact appropriately with the public,
24 supervisors, or co-workers. (Exh. 23D, 24F). The undersigned gives no
   weight to this extreme mental assessment as the claimant was not honest
25 about his alcohol usage and he denied any drug or alcohol history. (Exh.
   24F/2).

26

1   Again, the court finds no error.  Certainly, Dr. Canty's opinion is undermined by plaintiff's

2   dishonesty in his subjective report.

3         **F.**     **Dr O'Brien**

4         As to Dr. O'Brien, the ALJ stated:

> On January 12, 2013, at the request of the Disability Determination Service, the claimant underwent a consultative internal medicine examination with Janet O'Brien, M.D.  He complained of back and neck pain (due to a worker's compensation injury), hypertension, occasional sleep disturbance, and weight loss.  Dr. O'Brien diagnosed the claimant as having depression per old records, back and neck pain without evidence of radiculopathy with symptoms, hypertension, under suboptimal control; and weight loss per the claimant's history.
>
> Dr. O'Brien assessed the claimant had the ability to perform medium exertional work. . . .  The undersigned gives significant weight to this assessment with the exception of postural limitations which were not supported by the objective medical findings.  For instance, the claimant's physical examination revealed a normal gait, a reduced range of motion of the cervical spine (i.e., flexion at 40/50 degrees, extension at 35/60 degrees, lateral flexion at 30/45 degrees, and normal rotation), a limited range of motion of the dorsolumbar spine (i.e., flexion at 80/90 degrees, extension at 20/25 degrees, and lateral flexion at 20/25 degrees, and a negative straight leg raise).  In addition, he had a full range of motion of the shoulder, wrists, and elbows (with the exception of flexion at 145/150 degrees) and a normal range of motion of the hips (with the exception of left hip forward flexion at 90/120 degrees) and knees (with the exception of right knee flexion at 130/150 degrees and left knee flexion at 135/150 degrees).  Dr. O'Brien noted the claimant demonstrated no difficulty walking down the hall to the examination room, no difficulty sitting during the history, no difficulty getting onto the examination table, no guarding with moving about the examination room, and no difficulty removing his socks or shoes.  (Exh. 26F).

20   The court agrees with defendant that the ALJ provided sufficient reasons by noting objective

21   findings which are inconsistent with the doctor's assessed limitations.  See Rollins v. Massanari,

22   261 F.3d 853 (9th Cir. 2001).

23   ///

24   ///

25   ///

26   ///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

      1.    Plaintiff's motion for summary judgment (Doc. 17) is denied;

      2.    Defendant's cross-motion for summary judgment (Doc. 19) is granted; and

      3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 21, 2016

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

11